### HESTER *v.* HARRISON.

ATKINSON, J. In an action of ejectment parol evidence as to the contents of the deed under which the plaintiff claims was introduced without objection that the proper foundation for the introduction of such evidence had not been laid by proof of loss of the original deed. From the evidence introduced under such circumstances the jury was authorized to find that Ed. Holmes originally owned the premises in dispute, and had executed a deed thereto to the plaintiff while she was an infant, and delivered the same to her grandmother who paid the purchase-money; that the defendant admitted the execution of this deed to the plaintiff, and had requested the plaintiff to make a deed to these premises to his children, which she refused to do. This proof made out a prima facie case for the plaintiff. The fact that the testimony of Ed. Holmes, who was introduced as a witness for the plaintiff, was somewhat uncertain and confused as to the person to whom he made the deed, was a matter for the consideration of the jury, and would not authorize a nonsuit, where the jury was authorized to find that he had

in fact made such deed. The case is not one presenting an effort to create title to land by parol, but to prove the contents of a muniment of title to land by secondary evidence.

*Judgment reversed. All the Justices concur.*

No. 3391. SEPTEMBER 7, 1923.

Ejectment. Before Judge Kent. Laurens superior court. July 27, 1922.

The declaration in ejectment contained two demises, one in the name of Ed. Holmes, and the other in the name of Zenobia Hester, the real plaintiff. L. E. Harrison was the tenant in possession. The bill of exceptions states: "Before announcing ready for trial plaintiff stated that a notice to produce had been served on the opposite side, which notice was as follows: 'Zenobia Hester vs. L. E. Harrison. To C. C. Crockett, Esq. You are hereby notified to have and produce in Laurens superior court, to be used as evidence for the plaintiff at the Oct. term, 1921, from day to day and term to term, the following documents: Deed from Ed. Holmes to Zenobia Harrison. . . S. P. New, attorney for plaintiff. Due and legal service acknowledged. C. C. Crockett, Atty. for defendant.' To said notice to produce C. C. Crockett, Esq., atty. for defendant, made oral answer that the defendant was not in possession of said deed and had never been in possession."

Mrs. Zenobia Hester, plaintiff, testified as follows: "I am 25 years old. I know and am acquainted with that tract of land described as four or five acres, more or less, in the 52 district Laurens County, bounded on all sides by C. S. Pope, and the place where L. E. Harrison lived when I brought this suit; he lives there now, and has lived there about 20 years. It is the same land that was once owned by Mr. Ed. Holmes. John Harrison is my father and the brother of L. E. Harrison. The first I knew anything about this land belonging to me, John Harrison came to my home with a quitclaim deed to this land, asking me to sign it, making the land back to the children of L. E. Harrison. The defendant L. E. Harrison afterwards told me that he sent John Harrison to me to get me to sign that quitclaim deed. He told me that the deed was originally made by Ed. Holmes to Zenobia Harrison, which is myself, I having married Morris Hester. L. E. Harrison, the defendant, told me in January before I brought this suit, that Ed. Holmes made the deed to me, that it was my land, and that no one could make a safe title to that land except myself. The

defendant L. E. Harrison told me in January before I brought this suit that he had the deed from Ed. Holmes to Zenobia Harrison to this same tract of land described in this suit, at his home. He was in possession of the land at the time he told me that; and he said that the reason why he wanted the deed made by me to his children was because if it was made to him that his creditors would get it. I remember when L. E. Harrison went in bankruptcy. He was living on this land before that, and after he was discharged he still lived on it. He was not ousted by any trustee in bankruptcy. I don't know what the land is worth; it is in cultivation, used for a truck farm. There is a small house on it that the defendant lives in, consisting of one room, a shed-room, and veranda. There is a good well. The place is under wire fence, well ditched, and has a fruit orchard on it. I don't know how L. E. Harrison claims the title to this land. I remember the time of the sale from Mr. Ed. Holmes. I was four or five years old."

Morris Hester testified. "Zenobia Hester is my wife. I know the land described as four acres, more or less, in the 52 district G. M., Laurens County, Ga., on which L. E. Harrison lived at the time this suit was brought. He had lived there 17 or 18 years, and lives there now. It is the same land that was once owned by Ed. Holmes, and is worth $500, and has been worth on an average of $40 per year for rent. It has a house on it, is wired in, ditched, cultivated as a truck and fruit farm. I was at home when John Harrison came there to get my wife to sign a quitclaim deed to this land to the children of L. E. Harrison. She refused to sign it. L. E. Harrison has never told me that the deed was made to my wife. I don't know from whom he claims to have a deed."

Ed Holmes testified: "I originally owned the land described as four acres, more or less, in the 52 district Laurens County, bounded on all sides by C. S. Pope. It is the same land that L. E. Harrison was living on when this suit was brought. I made a warranty title deed to that same tract of land to Zenobia Harrison when she was a little girl five or six years old. Her father, John Harrison, negotiated the trade with me. My sister, Mrs. D. Brown, paid the money, $35. John Harrison told me to make the deed to his daughter Zenobia; he said he wanted her to have it. Fred Bell wrote the deed. He was a justice of the peace, and witnessed it. I delivered the deed to my sister, Mrs. D. Brown, Zenobia's grand-

mother, and the mother of John Harrison. Cross-examination: I understand now that the deed was intended to be made to Nina Harrison, another child of John Harrison by his last wife. I understand I made a mistake in making it to Zenobia Harrison. I would not swear that I made it to Zenobia. I am not certain who I made it to; it is my recollection that I made it to Zenobia Harrison. I don't remember who the witnesses were, or whether it was witnessed. There was no one present except me and Fred Bell. John Harrison had told me to make it to Zenobia, and Fred Bell came up there to write it. Redirect examination: The reason I say I understand now that I should have made the deed to Nina Harrison is because L. E. Harrison and John Harrison now say that it was intended to be made that way. I have never heard that there was a mistake, except from them. I have never talked with them about it until to-day. It was my understanding that it was to be made to Zenobia, and that I made it that way. I don't know from whom L. E. Harrison claims to have a deed."

*S. P. New,* for plaintiff.  *Larsen & Crockett,* for defendant.